## CONTINENTAL GIN CO. v. SIMS et al.

No. 13391—Opinion Filed Oct. 7, 1924.

**1. Chattel Mortgages—Filing—Removal of Property—Failure to Refile.**

A mortgage of personal property, whether made and filed for record within or without this state, if filed in the proper county, is constructive notice to subsequent purchasers and incumbrancers in good faith of such property only so long as the situs of the property remains unchanged and for 120 days after its relocation. If the original or an authenticated copy thereof is not filed within that time in the county of this state to which the property is removed, the mortgagee thereafter occupies the position of the holder of an unrecorded mortgage, and can assert no rights, dependent upon constructive notice, against the claims of subsequent mortgagees or materialmen whose claims against such property mature after the expiration of such 120-days period.

**2. Same — Fixtures —Appurtenances—Constructive Severance—Notice.**

Reservation of title to personal property to be installed and used as fixtures or appurtenances, expressed in a conditional sales contract, coupled with a written agreement that such property shall continue personal property until paid for, upon such contract being filed for record, imparts notice to subsequent purchasers and encumbrancers in good faith of the constructive severance of such personalty, but such notice is not imparted by an agreement for constructive severance expressed in a chattel mortgage, the full legal title being vested in the mortgagor and the mortgagee simply taking back the mortgage as a lien to secure the indebtedness, which mortgage is not refiled within the statutory period in a county to which such property is permanently removed.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by the Bank of Krebs against Jake Sims, N. A. Sims, the Continental Gin Company, T. R. Collett, trustee, Southwestern Cotton Oil Company, and Antrim Lumber Company. Judgment and decree foreclosing liens and establishing priority, from which decree the Continental Gin Company has brought this proceeding in error. Affirmed.

This action was commenced April 19, 1921, by the Bank of Krebs filing its petition in the district court of Pittsburg county. The petition was in the usual form for recovery upon notes and to foreclose a mortgage. Answers were filed by all of the defendants except the Southwestern Cotton Oil Company, which defaulted. An agreed statement of facts was filed in the case, which is, in substance, as follows:

On June 17, 1920, the defendant Jake Sims executed and delivered to the Bank of Krebs his certain promissory note for the sum of $2,503.33, with 10 per cent. interest after maturity, said note being payable October 5, 1920, and showing an indorsement extending the same to November 15, 1920. This note was secured by a real estate mortgage executed to the bank by Sims contemporaneously with the execution of the note, said mortgage being filed for record in the office of the county clerk of Pittsburg county July 16, 1920.

The Antrim Lumber Company claimed a lien for material and supplies used in the erection and repair of certain gin property, being the same property covered by the mortgage of the Bank of Krebs. The first material furnished by Antrim Lumber Company to Jake Sims was delivered June 15, 1920, and the last November 22, 1920, and all of the lumber and material so furnished was used in and upon the buildings and premises covered by the various liens involved in this action. Lien statement was filed by the lumber company in the office of the court clerk of Pittsburg county on December 8, 1920, and was for the sum of $2,319.35.

On May 22, 1920, Jake Sims executed and delivered to T. R. Collett, as trustee for the Continental Gin Company, a mortgage covering all the machinery used in the gin plant to secure an indebtedness of $3,000. At the time of the execution of this mortgage the gin machinery was located upon a gin site at Marysville, Cooke county, Tex., and this mortgage was recorded in the office of the county clerk of Cooke county, Tex., May 25, 1920. On July 14, 1920, Jake Sims removed this machinery from Marysville, Tex., to Krebs, Okla., and installed it in and upon the gin property and premises involved in this action. T. R. Collett, trustee, and the Continental Gin Company, knew of the removal of this machinery at the time it was removed. A certified copy of this mortgage was filed in the office of the county clerk of Pittsburg county March 21, 1921. On February 4, 1921, Jake Sims executed another mortgage to the Continental Gin Com-

pany covering the identical machinery covered by the mortgage to T. R. Collett, trustee, and for the identical amount of $3,000, and this mortgage was filed in the office of the county clerk of Pittsburg county March 24, 1921. Another mortgage was executed by Jake Sims to the Continental Gin Company January 5, 1921, covering one electric tramper, but as the lower court decreed this to be a first and prior lien upon the electric tramper this particular mortgage is not involved at this time.

Appropriate answers and cross-petitions were filed in the case to present the question of priority among these various liens and encumbrances. On March 13, 1922, the cause was tried to the court and resulted in a decree in favor of Antrim Lumber Company, the Bank of Krebs and the Continental Gin Company, respectively, and against Jake Sims for the amounts respectively claimed by each, and establishing the priority of their liens in the order just stated. After unsuccessful motion for new trial the Continental Gin Company has brought the case here by petition in error with case-made attached for review.

W. E. Utterback and D. S. McDonald, for plaintiff in error.

Guy L. Andrews, for the Antrim Lumber Company.

Opinion by LOGSDON, C. The sole question for determination is the correctness of the action of the trial court in determining the priority of the lien of Antrim Lumber Company over the chattel mortgage of the Continental Gin Company, and involved in this determination is the incidental question of the effect of an agreement between the mortgagor and the mortgagee that the gin machinery should be deemed and considered personal property.

Upon the question of priority and notice the applicable provisions of Comp. Stat. 1921, are as follows:

"Sec. 7650. A mortgage of personal property is void as against creditors of the mortgagor, subsequent purchasers, and incumbrancers of the property, for value, unless the original, or an authenticated copy thereof be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated."

"Sec. 7651. The filing of a mortgage of personal property, in conformity to the provisions of this article, operates as notice thereof to all subsequent purchasers and incumbrancers of so much of said property as is at the time mentioned in the preceding section located in the county or counties wherein such mortgage or authenticated copy thereof is filed: Provided, that when a mortgaged chattel is moved into this state, or from one county to another, any previous filing of the mortgage shall not operate as notice as against subsequent creditors, purchasers, mortgagees or incumrancers for a longer period than 120 days after such removal, but such mortgage must be refiled in the county to which the chattel is removed and in which it is permanently located."

These provisions of the statute have been considered and passed upon several times by this court, and the meaning and effect thereof are well settled by these decisions. In the case of Snodgrass v. J. I. Case Threshing Machine Company, 70 Okla. 303, 174 Pac. 515, in the body of the opinion this language is used:

"Unquestionably the Legislature of this state had the authority to enact this statute, and our only duty is to construe the statute as we find it. We can find no fault with the wisdom of the Legislature in requiring the mortgagee of personal property to look after his property three times a year in order to protect his lien."

In the case of First National Bank of Vinita v. Guess et al., 72 Okla. 125, 179 Pac. 29, it is stated in the body of the opinion:

"Where it is expressly provided by the statute that upon the removal of the mortgaged goods from the town or county where the mortgage was first filed, the mortgage must be refiled in the county to which the mortgaged property is removed within a fixed time, and the mortgagee neglects to have the mortgage refiled within the statutory period, this omission destroys the effect of the original registration as constructive notice."

While both of the cases above cited were based upon removal of property from one county to another within the state and failure of the mortgagee to refile his mortgage or an authenticated copy thereof in the county to which the mortgaged property had beeen removed, the rule announced in these cases is applicable to the removal of mortgaged property from without the state to a point within the state, where the mortgagee fails to comply with the requirements of section 7651, supra. This has been determined by this court in the recent case of Arnold et al. v. Wittie et al., 99 Okla. 236, 227 Pac. 132. In that case the property involved was purchased in the state of Kansas under a conditional sales contract which was duly recorded in the proper county in that state. The property was afterwards removed to Greer county, Okla., and there was subsequently mortgaged within 120 days after its location in such county. After

the expiration of the 120-day period the Greer county mortgage matured, the mortgagee named therein took possession of the property under its mortgage, and the plaintiff brought an action of replevin for recovery of the property under its conditional sales contract made and filed for record in the state of Kansas. It was there insisted that because the mortgage in Greer county was executed before the expiration of the 120 days in which the plaintiff might have refiled its conditional sales contract in Greer county the priority of its lien was not destroyed by the Greer county mortgage. In reference to this contention it is stated in the body of the opinion as follows:

"It is contended that, because the mortgage under which the defendant seeks to hold the car was executed within the 120-day period after the property was permanently located in Greer county, the mortgage was void as against the claims of the plaintiffs, but we think the time of the execution of the mortgage is not controlling. With the expiration of the 120-day period the Kansas registration ceased to be constructive notice, and thereafter plaintiffs were in the position of the holder of an unrecorded chattel mortgage. The defendant, after the 120 days in which the defendant had constructive notice of plaintiff's claim had expired, took possession in good faith and with the consent of the vendee, to foreclose its mortgage. We think that was a rightful possession, and not in violation of any of the rights of the plaintiffs, and being in the rightful possession as a mortgagee without notice, its right of possession was superior to that of the plaintiffs."

One of the facts, stipulated by the parties in this case in the agreed statement, reads as follows:

"The Continental Gin Company and T. R. Collett, trustee, on the 30th day of June, 1920, knew that the plant at Marysville, Cooke county, Tex., was being dismantled and moved to Krebs, Pittsburg county, Okla."

No effort was thereafter made to protect its lien by filing a certified copy of the Cooke county mortgage in Pittsburg county until March 21, 1921. At the date of filing the materialman's lien in the office of the court clerk of Pittsburg county by Antrim Lumber Company, the 120-day period within which the Continental Gin Company and T. R. Collett could have preserved the lien of the Cooke county mortgage and its effect as constructive notice had long since expired. The same is true as to the maturity of the indebtedness and default in the mortgage of the Bank of Krebs. Therefore, the filing of the Cooke county mortgage in Pittsburg county on March 21, 1921, could not operate to revive the expired lien nor relate back

as constructive notice to the subsequent mortgagee and materialman whose rights as against the property matured at a time when there was no constructive notice to any one of the prior rights of the Continental Gin Company. Likewise. the new mortgage taken by the Continental Gin Company upon this property in Pittsburg county, February 4, 1921, was ineffective for any purpose in so far as the rights of the Bank of Krebs and Antrim Lumber Company are concerned.

Therefore the judgment of the trial court determining the priority of the various liens against this property was correct, and must be sustained unless it can be said that the gin machinery covered by the mortgage of T. R. Collett, as trustee for the Continental Gin Company, was personal property so that the same could not be included in and covered by the materialman's lien of Antrim Lumber Company, and the real estate mortgage of the Bank of Krebs.

In support of its contention that the gin machinery was personal property plaintiff in error has cited and quoted from a number of authorities from other jurisdictions. There authorities, if based upon statutes similar to our own, would be persuasive in support of the rule contended for in this case if it were not for the fact that the law of this state has been determined by statutory enactment, and by the construction placed thereon by this court.

Real property is defined by section 8395, Comp. Stat. 1921, which reads as follows:

"Real or immovable property consists of: First, land. Second, that which is affixed to land. Third, that which is incidental or appurtenant to land. Fourth, that which is immovable by law."

Section 8399 reads:

"Every kind of property that is not real is personal."

Section 8397 reads:

"A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs, or imbedded in it as in the case of walls, or permanently resting upon it. as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws."

In support of this contention that this machinery is to be deemed and considered personal property, plaintiff in error cites several cases from this court, but an examination of these cases discloses that they are easily distinguishable in their facts from the instant case. In Lawton Pressed Brick & Tile Company et al. v. Ross-Kellar Triple

Pressure Brick Mch. Co. et al., 33 Okla. 59, 124 Pac. 43, there was a provision in the conditional sales contract by which the parties agreed that title to the property should remain in the seller, and that the machinery covered by the contract when installed should continue as personal property until final payment of the purchase price, and this conditional sales contract was recorded in the proper county. This imparted notice of the reservation of title by the seller and of the constructive severance of the machinery from the realty after installation.

In Tolle v. Vandenburg, 44 Okla. 780, 146 Pac. 212, the property claimed to constitute personalty was a portable grain bin placed and used by Vandenburg upon a lot owned by Wadsworth. After sale of the lot by Wadsworth his vendee sought to retain this portable bin as a fixture and a part of the realty. The court concluded that the bin being a portable bin, and never having been affixed to the lot in question in any permanent manner, the same was personal property and subject to the reserved rights therein of Vandenburg. It is expressly stated in the closing paragraph of the opinion that the question of notice was immaterial by reason of the nature of the specific property.

In the case of Continental Gin Company v. DeBord, 49 Okla. 32, 150 Pac. 892, this court was considering the nature of improvements placed upon town lots in the Chickasaw Nation at a time when the title to all lots in town sites of the Indian Territory still remained in the respective nations. It merely followed the holdings of the Court of Appeals of the Indian Territory to the effect that such improvements upon town lots, the title to which remained in the Indian Nation or Tribe, constituted personal property.

In the case of Murray Company v. Chickasha Cotton Oil Company et al., 73 Okla. 106, 174 Pac. 1091, the court was considering a conditional sales contract, duly recorded, in which conditional sales contract it was provided that the machinery should not be annexed to or become a part of the realty until the same had been fully paid for. In that case the court followed its prior holding in the Lawton Pressed Brick & Tile Company Case, supra.

In the DeBord Case, supra, the following significant language is used:

"While it is ordinarily true that buildings attached to the soil and machinery placed therein which are affixed to the buildings become a part of the real estate, as held by the Supreme Court of Oklahoma Terri-

tory in Great Western Mfg. Co. v. Bathgate et al., 15 Okla. 87, 79 Pac. 903, yet the parties by their agreement may treat the property as personalty and as between the parties this agreement would constitute a constructive severance thereof, and the property may be the subject of conversion, for which action will lie."

In the instant case there was no conditional sales contract reserving title to the Continental Gin Company until the purchase price of the machinery was fully paid. The transaction between the Gin Company and Sims passed the title without reservation to Sims and the Gin Company took a mortgage back through its trustee to secure the payment of the money due it. In the mortgage which was executed by Sims at that time, and following the description of the property, occurs this language:

"All of the aforesaid property is personal property, and is to be located in Cooke county, Tex., upon the following described real estate."

In order for this language to constitute constructive notice to subsequent purchasers or incumbrancers of the gin machinery, as fixtures or appurtenances to realty, of the agreement between the original parties that it should be personal property, if it could do so at all, it was necessary that the instrument containing this clause, or a duly authenticated copy thereof, should be filed in the county to which the property was afterwards removed within 120 days from the date of its relocation. This it is admitted was not done.

It is, therefore, concluded that the contention of the Continental Gin Company that the gin machinery, after it was placed in the gin house at Krebs for the purpose of being used as a gin, constituted personal property and was therefore not subject to the materialman's lien nor to the real estate mortgage of the bank, cannot be sustained.

The judgment and decree of the trial court should be in all things affirmed.

By the Court: It is so ordered.